■ In the Matter of WINDSOR PARK ASSOCIATES, Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent. — Judgment of the Supreme Court, New York County (Wallach, J.), entered September 2, 1981, which denied petitioner's application and dismissed the petition, is reversed, on the law and facts, without costs, and the petition to annul the determination of respondent New York City Conciliation and Appeals Board is granted. An application for hardship increases in rents of the Windsor Park Apartments located in Bayside, Queens, was filed prior to March 27, 1975 with the respondent New York City Conciliation and Appeals Board (CAB). The application sought an increase of approximately 18.8% in the rents. On October 15,

1976, the CAB issued an order and opinion pursuant to subdivision (a) of section 43 of the Code of the Rent Stabilization Association of New York City, Inc. (Code) (Administrative Code of City of New York, § YY51-6.0, subd c, par [6]), granting petitioner owner of the complex a rent increase of 6% effective on April 27, 1975 and .31% effective April 27, 1976. The tenants were advised that pursuant to section 40 of the Code, they had the right to cancel their leases on 60 days' written notice provided such notice was served on the owner within 30 days after the tenants' receipt of the board's order. Thereafter the tenants' association instituted a CPLR article 78 proceeding in Queens County to review the board's order. The court stayed enforcement of the order and subsequently granted the tenants' petition, remanding the matter to the board for further processing including the right of tenants to audit the owner's books. Upon appeal, the Appellate Division, Second Department, stayed the Special Term order to the extent of permitting the owner to collect the rent increases which the board had authorized, beginning with the January, 1977 payments. The increases paid were to be held in escrow pending determination of the appeal. The appeal resulted in an affirmance. However, the order continued the rent increase escrow arrangement (59 AD2d 121). The board reprocessed the hardship proceeding and allowed over-all rent increases in an order and opinion dated January 19, 1979, of 6.21%. (Increases would start at 6% on April 27, 1975 with the remaining .21% collectible on April 27, 1976.) The board was called upon to rule on the liability of tenants for the retroactive portion of the increases granted. On June 29, 1979, it issued an amended order, which provided that vacating tenants did not have to pay the retroactive portion of the increase. Section 40 of the Code reads in pertinent part: "In the event that an order is issued increasing the stabilization rent because of owner hardship, the tenant may, within thirty (30) days of his receipt of a copy of the order of the CAB, cancel his lease on sixty (60) days' written notice to the owner. During said period the cancelling tenant may continue in occupancy at no increase in rent." The board interpreted section 40 to give each tenant the right to cancel his lease within 30 days following service of the board's amended order, not the initial order. However, in accordance with the order of the Appellate Division, Second Department, all the tenants herein paid a 6.31% increase from January, 1977 to June, 1979 into the escrow fund and thereby signified that they would remain in possession while paying the increase. Under rent control, as distinct from stabilization, increases are effective four months after the filing of the application for the increase with the Office of Rent Control. Statutory tenants may terminate their occupancy on 30 days' notice. Although applications to the Office of Rent Control entail a delay of between one and two years after the filing of the application, the tenant is required to pay all of the retroactive increases in rent for his period of occupancy. The tenant cannot avoid the payment of the hardship increase for the tenant's previous period of occupancy by vacating. Similarly, the sole purpose of section 40 of the Code is to relieve a stabilized tenant of the obligation of continued occupancy under the lease which was signed prior to the issuance of a hardship increase. It is the *future* occupancy which the tenant has a right to cancel. Section 40 was never intended to allow tenants to remain in occupancy for a period of four years and then cancel their lease without any obligation to pay the hardship rent increase for their period of occupancy. In the case at bar, the CAB issued an order "increasing" the stabilization rent by 6.31% retroactive to April 27, 1975 on October 15, 1976. This order was never annulled by the Supreme Court in Queens County which remanded to the CAB for further proceedings. In affirming this remand, the Appellate Division required the tenants to pay the 6.31% hardship increase, albeit into an escrow

fund. Thereafter the CAB on January 19, 1979, did not issue an order "increasing" the stabilization rent but rather a *de minimis* modification *decreasing* the hardship increase by .1%. The tenants herein have actually paid the increase in view of the escrow provision ordered by the Appellate Division, Second Department. Consequently, the imposition of the increase does not constitute an unexpected new burden. If allowed to stand however, the order of the CAB issued on June 29, 1979, would provide tenants with a windfall where none was contemplated by the Code or the Appellate Division order. Respondent CAB's determination therefore, was arbitrary and capricious and wholly inconsistent with the language and intent of section 40 of the Code. Concur — Asch, J. P., Bloom, Fein, Milonas and Alexander, JJ.